UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Villar

    v.                              Civil No. 15-cv-270-LM
                                        Opinion No. 2017 DNH 157

Federal Bureau of
Investigation

O R D E R

Richard Villar, a prisoner, brings this suit pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), challenging the refusal of the Federal Bureau of Investigation ("FBI") to disclose certain documents and information that he requested pursuant to that statute. The FBI and Villar have filed cross motions for summary judgment.

## Standard of Review

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). "Where, as here, the parties have filed cross motions for summary judgment, the court applies the same standard applicable to all summary judgment motions, but

considers the motions separately." Citizens for a Strong New Hampshire, Inc. v. I.R.S., No. 14-CV-487-LM, 2015 WL 5098536, at *3 (D.N.H. Aug. 31, 2015).

Background

In January 2008, Villar was convicted of armed robbery and conspiracy to commit armed robbery. Following unsuccessful appeals and petitions for habeas corpus, Villar sent the FBI a Freedom of Information Act and Privacy Act request letter, in which he requested all records or data in the FBI's possession stored "specifically under my name and /or an identifier assigned to my name." Doc. no. 43-3 at 1. Under a section in the letter entitled "SPECIFIC REQUESTS," Villar requested several documents relating to Shauna Harrington, a witness who testified at his criminal trial. That request included, among other things, interview notes, police reports, and criminal history about Harrington and any records of benefits or inducements that the government provided Harrington in exchange for her testimony. Doc. no. 43-3 at 3.

Because Villar's request for records concerning Harrington could have included documents other than those covered by Villar's main request for the documents in his file, the FBI opened two separate requests. See Doc. no. 43 at 3. The first request covered the records related to Villar or stored in his

2

file (the "Villar Request").  The second request concerned the FBI's records about Harrington (the "Harrington Request").

In response to the Harrington Request, and pursuant to its policy for requests about third parties, the FBI issued a conditional "Glomar response."[1]  In that response, the FBI refused to search for records about Harrington unless Villar provided express authorization from Harrington, proof of Harrington's death, or a "clear demonstration that the public interest in disclosure outweighs personal privacy interests and a significant public benefit would result from the disclosure of the requested records."  Doc. no. 43-4 at 1.  In support of its refusal, the FBI cited the Privacy Act, 5 U.S.C. § 552a, which, it asserted, prohibited it from disclosing records about third parties.  Because Villar did not provide the required information, the FBI did not search for documents about Harrington and did not process the Harrington Request.  Villar did not appeal the FBI's response to the Harrington Request.

---

[1] A Glomar response occurs when the government refuses to confirm or deny the existence of requested records.  Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 436 (1st Cir. 2006). "The 'Glomar response' derives its name from a ship, the Hughes Glomar Explorer, built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor."  Id. at 436 n.3.

3

In response to the Villar Request, the FBI conducted a search of its records and identified 615 pages[2] of documents that were responsive.[3]  In September 2012, the FBI released 388 pages of documents to Villar, 126 of which contained redactions.  The FBI withheld the remaining 227 documents in their entirety.  In support of its decision to not disclose all of the requested information, the FBI cited several exemptions to FOIA.

Villar appealed the FBI's response to the Villar Request to the Department of Justice's Office of Information Policy.  The Office of Information Policy denied his appeal in June 2015.

Villar then brought this suit, proceeding pro se,[4] and asserting claims against the FBI, David Hardy, the Section Chief for the FBI's Records Management Division, and Brian Keefe, an FBI Special Agent.  The court previously dismissed Villar's claims against Hardy and Keefe.  Doc. no. 40.  As a result, the

---

[2] The FBI first informed Villar that it had identified 651 documents responsive to the Villar Request.  See Doc. no. 43-6.  The FBI now contends that there were 615 documents responsive to the Villar Request.  Doc. no. 43-2 at ¶ 86.

[3] Initially, the FBI refused to disclose any of the documents in Villar's files, asserting that they were part of a "pending or prospective law enforcement proceeding."  Doc. no. 43-8 at 1.  Villar successfully appealed that decision to the Department of Justice's Office of Information Policy, which remanded Villar's request back to the FBI.  See doc. no. 11.

[4] Villar has since obtained counsel.

only claim remaining in this action is Villar's FOIA claim against the FBI.

## **Discussion**

The FBI moves for summary judgment, arguing that its withholding of information was proper under FOIA Exemptions 6, 7(C), 7(D), and 7(E). See U.S.C. § 552(b)(6) and (b)(7)(C), (D), and (E). Villar objects, arguing that the FBI provided an insufficient Vaughn index,[5] the FBI's asserted exemptions do not apply here, and the FBI has waived its right to assert other exemptions.

Villar also moves for summary judgment, and the FBI objects. In support of their positions on Villar's motion, both parties have incorporated their arguments on the FBI's motion for summary judgment.

I. FOIA

FOIA requires federal agencies to make their records available to any person upon request. 5 U.S.C. § 552(3). FOIA

---

[5] "A Vaughn index is a comprehensive list of all documents that the government wants to shield from disclosure in Freedom of Information Act (FOIA) litigation, each document being accompanied by a statement of justification for nondisclosure. The name derives from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)." New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs., 778 F.3d 43, 48 (1st Cir. 2015) (internal quotation marks omitted).

was "'enacted to facilitate public access to Government documents' and 'designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Union Leader Corp. v. U.S. Dep't of Homeland Sec., 749 F.3d 45, 49–50 (1st Cir. 2014) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)). "FOIA's 'basic policy of full agency disclosure' furthers the statute's essential purpose of permitting citizens to know 'what their government is up to.'" Id. at 50 (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (internal quotation marks omitted)).

The statute's "right of access is not absolute, however, as FOIA exempts certain categories of materials from disclosure in order to effectuate the goals of the FOIA while safeguarding the efficient administration of the government." Id. (internal quotation marks omitted); see also 5 U.S.C. § 552(b) (providing exemptions). "To fulfill the broad purposes of FOIA, [courts] construe these exemptions narrowly." Stalcup v. C.I.A., 768 F.3d 65, 69 (1st Cir. 2014). Further, agencies cannot withhold a document in its entirety merely because it contains some exempt material. Airaj v. United States Dep't of State, 15-cv-983(ESH), 2016 U.S. Dist. LEXIS 55750, at *30 (D.D.C. Apr. 27, 2016). Rather, "FOIA . . . mandates that 'any reasonably segregable portion of a record shall be provided to any person

6

requesting such records after deletion of the portions which are exempt under section 552(b).'" Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 442 (1st Cir. 2006) (quoting 5 U.S.C. § 552(b)).

The government bears the burden of demonstrating that material is exempt from disclosure. New Hampshire Right to Life, 778 F.3d at 48. When assessing whether an exemption applies, courts must "employ[] a de novo review [and] find an adequate factual basis to support the agency's assertion of the exemption." Town of Winthrop v. F.A.A., 328 F. App'x 1, 5 (1st Cir. 2009) (citing Maynard v. C.I.A., 986 F.2d 547, 567 n.11 (1st Cir. 1993)). Moreover, courts must make a determination about whether the agency has conducted a proper segregability analysis on withheld material. Carpenter, 470 F.3d at 443.

II. FBI's Motion

The FBI moves for summary judgment, arguing that it properly issued a Glomar response to the Harrington Request and that its withholdings of documents responsive to the Villar Request were justified under several FOIA exemptions. Villar objects, arguing that the FBI has failed to provide a sufficient Vaughn index, the FOIA exemptions on which the FBI relies are inapplicable, and the FBI has waived its right to assert certain exemptions.

7

A.  The Harrington Request

The FBI moves for summary judgment on the portion of Villar's FOIA claim concerning its Glomar response to the Harrington Request.  As an initial matter, the FBI argues that Villar's complaint does not challenge the FBI's Glomar response to the Harrington Request and therefore his FOIA claim does not encompass a claim based on that request.  In addition, the FBI argues that to the extent the complaint is construed to include a claim based on its Glomar response, that claim must be dismissed because (1) Villar failed to exhaust his administrative remedies for that claim and (2) the Privacy Act prohibited it from releasing third-party records about Harrington.

Villar's complaint contains no allegation concerning the FBI's refusal to search for records relating to Harrington.  Villar's objection likewise does not mention the FBI's Glomar response to the Harrington Request.  Nevertheless, given that Villar's complaint was filed pro se and that the complaint and objection do discuss Harrington and her role in Villar's criminal trial, the court will construe the complaint to include a claim challenging the FBI's response to the Harrington Request.

In resolving the FBI's substantive arguments against this claim, the court focuses on Villar's failure to exhaust administrative remedies because it is dispositive. Before seeking judicial review of an agency's response to a FOIA request, a plaintiff generally must exhaust all administrative remedies. Kottori v. F.B.I., 784 F. Supp. 2d 83, 85 (D. Mass. 2011) (noting that "FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review'") (quoting Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004)). To properly exhaust all administrative remedies, the requester must comply with the agency's regulations, Union Leader Corp. v. U.S. Dep't of Homeland Sec., No. 12-CV-18-JL, 2012 WL 1000333, at *1 (D.N.H. Mar. 23, 2012), and must "exhaust . . . the administrative appeals process . . . before bringing suit." King v. U.S. Dep't of Justice, No. CV 15-1445 (RDM), 2017 WL 1166309, at *3 (D.D.C. Mar. 28, 2017).

In support of its motion, the FBI attached a declaration from Hardy. See doc. no. 43-2. In that declaration, Hardy asserts that Villar never appealed the FBI's denial of the Harrington Request. The FBI has also attached as exhibits to Hardy's declaration a history of the correspondence between Villar and the FBI concerning his FOIA request. That history demonstrates two relevant points. First, in each correspondence discussing his appeal, Villar referenced only the administrative

9

request number associated with the Villar Request. See doc. nos. 43-5, 43-9, 43-17, 43-22. Second, although some of Villar's appeal letters discuss his need to obtain information about Harrington, those letters appear to request that the FBI disclose any Harrington-related material from the 615 pages in Villar's file, not that the FBI conduct an independent search for records about Harrington. See doc. nos. 43-9; 43-17 (appeal letter from Villar observing that the documents he requested were "all . . . related to [his] specific case"); 43-22. Therefore, the FBI has presented evidence that Villar did not appeal its response to the Harrington Request.

Villar points to no evidence demonstrating that he appealed the FBI's response to the Harrington Request. Nor has he argued that he is exempt from FOIA's exhaustion requirement. Accordingly, the FBI is entitled to summary judgment on the portion of Villar's claim concerning the Harrington Request.

B. The Villar Request

The FBI moves for summary judgment on Villar's claim challenging its response to the Villar Request, arguing that its nondisclosure of material covered by that request is justified under FOIA Exemptions 6, 7(C), 7(D), and 7(E). Villar objects, contending that the FBI's index and declaration are insufficient to secure summary judgment, the FBI has waived the right to rely

on Exemption 7(E), and the evidence demonstrates that the exemptions the FBI asserts are not applicable.

### 1. FBI Index and Declaration

Villar argues that the FBI has not provided sufficient evidence to substantiate the FOIA exemptions that it asserts. In support, Villar contends that the FBI has failed to provide a Vaughn index that identifies "each withheld document" and "describe[s] the contents of each document" in a manner that would "correlate the claimed exemptions to the withheld documents." Doc no. 45 at 12. In response, the FBI asserts that its index and affidavit adequately set forth why the material it withheld is exempt from disclosure under FOIA.

"To provide for the broadest possible disclosure and further the adversary process, courts often require the withholding agency to provide a 'Vaughn' index." Carpenter, 470 F.3d at 442. Ordinarily, a Vaughn index "includes a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document." Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994). The index serves the following three purposes:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to

> operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

Id. at 228 (quoting Maynard, 986 F,2d at 557); see also New Hampshire Right to Life, 778 F.3d at 48 n.3 ("A Vaughn index is necessary in FOIA litigation, as only the party opposing disclosure will have access to all the facts." (internal quotation marks and citation omitted)). When assessing a Vaughn index, "[i]t is the function, not the form, which is important, and the question is whether the particular taxonomy employed afford[s] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." Church of Scientology, 30 F.3d at 231. When an agency fails to provide an index fulfilling these functions, a court may deny summary judgment. Id. at 240.

Here, the FBI submitted what it calls a "Vaughn coded" index and a declaration to justify its withholdings. The codes refer to a set of codes that the FBI has assigned to each type of information that it claims is exempt under FOIA. Each code also relates to a particular exemption that the FBI contends exempts the covered material from disclosure. To justify individual redactions, the FBI has stamped a code on the face of the documents next to each redaction. For pages withheld in full, the FBI has provided a table identifying the page number

withheld and referencing a code to justify that withholding. The Hardy declaration also describes the type of material withheld under each category and explains the bases for claiming that the material is exempt from disclosure.

"Use of coded indices has been explicitly approved by several circuit courts as long as each deletion is correlated 'specifically and unambiguously to the corresponding exemption,' and the agency affidavit places 'each document into its historical and investigative context.'" Maynard, 986 F.2d at 559 n.13 (quoting Keys v. United States Dept. of Justice, 830 F.2d 337, 349-50 (D.C. Cir. 1987)). In Maynard, the First Circuit approved of the use of coded indices, observing that "in some instances," they can "accomplish the functions of Vaughn more efficiently and clearly than would the classical Vaughn indices." Id. at 559 (internal quotation marks omitted).

Nevertheless, some courts have rejected coded indices where an agency has withheld numerous pages in full because the coded justifications do not provide the context necessary to evaluate the agency's withholdings or its segregability analysis. Sciacca v. F.B.I., 23 F. Supp. 3d 17, 29-30 (D.D.C. 2014) (denying motion for summary judgment because agency's coded index did not "bother even to list or describe the responsive documents at issue" and did "not provide any information on the segregability of the documents that were entirely withheld");

Awan v. U.S. Dep't of Justice, No. CIV.A. 10-1100 BAH, 2011 WL 2836561, at *1-2 (D.D.C. July 13, 2011) (rejecting coded indices for documents withheld in full and ordering in camera review); Schoenman v. FBI, 604 F. Supp. 2d 174, 197-98 (D.D.C. 2009) (holding index insufficient because "[w]here the FBI has withheld documents in their entirety, the Vaughn index fails to provide any description of such documents"); Robinson v. F.B.I., Civ. No. 06-3359, 2008 WL 2563212, at *8-9 (E.D. Pa. Feb. 14, 2008) (rejecting coded indices and noting heightened concerns where "entire pages, or substantial portions thereof, are redacted and no specific context in which the redacted information appears is provided").

This limitation on coded indices comports with First Circuit precedent. In Church of Scientology, the First Circuit rejected an agency's Vaughn index and accompanying declarations, which sought to justify the withholding of numerous documents in their entirety. 30 F.3d at 230-31, 240. In doing so, the First Circuit concluded that the index's descriptions of the withheld documents were "too cursory to permit debate, or an informed judgment, about whether they properly may be withheld." Id. at 230. The court also refused to credit the agency's affidavits, because they only discussed the withheld material generally and did not refer to specific documents. Id. at 231. In addition, the court held that the index's lack of detail rendered it

14

deficient in demonstrating segregability. Id. at 231-32.[6] As the court observed, many of the index's descriptions failed to explain why the agency had withheld a document in full, rather than redacting the exempt material. Id. at 231-33. And the agency's affidavits, which only stated that it conducted a segregability analysis, were "wholly conclusory" without any explanation of that analysis. Id. at 231.

Significantly, the court in Church of Scientology also distinguished Maynard and its approval of coded indices. Id. at 233. The court reasoned that the agency in Maynard had provided more detail in support of its withholding because it "produced the withheld documents in redacted form" and because the court had reviewed all documents at issue in camera. Id.

Here, the FBI's coded index and declarations fail to provide Villar with the opportunity to contest the agency's conclusions and fail to provide the court with the factual basis it needs to conduct a de novo review. The FBI has withheld in

---

[6] Although the Church of Scientology court noted that the government could proceed on a categorical basis in demonstrating that identifying information about third-parties is exempt under Exemption 7(C) (an exemption that the FBI asserts here), it concluded that this fact did not relieve the agency of the burden of "demonstrat[ing] on an item-by-item basis why documents should not be released with personal identifying information redacted." 30 F.3d at 238 n.22. In any event, the FBI has not argued in its legal brief that categorical treatment of the exempt material is appropriate here.

15

full what appears to be numerous lengthy documents without providing even a cursory description of what those documents contain.[7] Several long ranges of pages are withheld in their entirety based on a uniform set of codes, which raises doubt about whether the FBI correlated each exemption to a particular portion of a document, as it is required to do. See, e.g., doc. no. 43-26 at 6-7 (withholding pages 217-225, 238-90, 337-48). And while the FBI has provided a lengthy declaration justifying the claimed exemptions, that declaration only discusses the exempt material in general terms and fails to address the specific documents at issue. Finally, the FBI has not provided any explanation for its conclusion that the withheld documents contain no segregable, disclosable material. The agency's only reference to segregability is the conclusory assertion in Hardy's declaration that the FBI conducted a segregability analysis. See doc. no. 43-2 at ¶ 86.

Accordingly, the agency's index and its affidavit are not a sufficient basis for this court to grant summary judgment.[8]

---

[7] Because the FBI only identifies withheld material by page, and not by document, the court can only presume that the long ranges of consecutively withheld pages are larger documents. See doc. no. 43-26.

[8] Although some cases appear to uphold the type of index used here, see Hodge v. FBI, 764 F. Supp. 2d 134, 2011 U.S. Dist. LEXIS 14873 (D.D.C. Feb. 14, 2011); Fischer v. United States DOJ, 596 F. Supp. 2d 34, 43-44 (D.D.C. 2009), the FBI provides no First Circuit authority permitting it to dispense

16

2. Applicability of the Exemptions

Because the FBI has failed to provide the court with sufficient information to conduct its de novo review, the court will not assess the applicability of the exemptions that the FBI claims at this juncture.

III. Villar's Motion

Villar moves for summary judgment, arguing that the FBI has waived its right to rely on some of the claimed exemptions and that those exemptions do not apply. In response, the FBI argues that it has demonstrated that the withheld material is exempt from disclosure under FOIA.

A. Waiver

Villar argues that the FBI waived the right to assert Exemptions 7(D) and 7(E) because the agency did not reference those exemptions as a basis for withholding material at the

---

with the requirements that it provide adequate context about withheld material and address segregability in detail. See Church of Scientology, (requiring an adequate description of withheld documents and segregability assessment); Widi v. McNeil, No. 2:12-CV-00188-JAW, 2016 WL 4394724, at *26–27 (D. Me. Aug. 16, 2016) (citing Church of Scientology and holding index inadequate where agency failed to provide segregability detail for each document), reconsideration granted in part, No. 2:12-CV-00188-JAW, 2017 WL 1906601 (D. Me. May 8, 2017).

17

administrative level.  In response, the FBI argues that waiver is not applicable here.

As an initial matter, the FBI points out that it did, in fact, reference Exemptions 7(D) and 7(E) in its response to Villar's request.  See Doc. nos. 43-16, 43-24.  Villar, on the other hand, provides no evidence to support his assertion that the FBI did not assert the exemptions at the administrative level.  More importantly, however, an agency cannot "'waive' its right to invoke an exception prior to suit." Hodes v. U.S. Dep't of Hous. & Urban Dev., 532 F. Supp. 2d 108, 114 n.2 (D.D.C. 2008) (referring to waiver argument as "clearly meritless"); see also Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 361 n.2 (S.D.N.Y. 2008) (rejecting argument that agency waived right to invoke exemption).

Therefore, the court denies Villar's motion for summary judgment to the extent it relies on the waiver theory.

B. Applicability of Exemptions

Villar also contends that he is entitled to summary judgment on his FOIA claim because the exemptions on which the FBI relies do not apply to the withheld information.  In his declaration, Hardy makes several assertions describing the withheld material and explaining why the material qualifies for an exemption to FOIA's disclosure requirements.  Based on the

summary judgment record, these assertions create disputed issues of fact that preclude summary judgment in Villar's favor.

Accordingly, Villar's motion for summary judgment is denied.

IV. The Path Forward

The court will permit Villar and the FBI to file additional motions for summary judgment. Church of Scientology, 30 F.3d at 239 (noting that the agency would have "to revise its submissions" after its Vaughn index was rejected); Baker v. U.S. Dep't of Homeland Sec., No. 3:11-CV-588, 2012 WL 245963, at *4 (M.D. Pa. Jan. 25, 2012) ("[W]here a justification for withholding documents was not in bad faith, but was instead vague, the proper remedy is to allow the agency to submit a revised supplemental declaration and Vaughn index regarding these particular materials."). Should the FBI file a new motion for summary judgment, it must support its withholdings with enough detail to allow the court and Villar to assess its conclusions concerning the applicability of the FOIA exemptions on which it relies and segregability. That is not to say that the FBI must file a traditional Vaughn index, as opposed to relying on a supplemented version of the coded format provided here. If, however, such a format is used, the FBI's submission must provide additional detail to justify its withholdings.

## Conclusion

For the foregoing reasons, the FBI's motion for summary judgment (doc. no. 43) is granted in part as to the Harrington Request and denied as to the Villar Request without prejudice to filing a new motion in accordance with this order. In addition, Villar's motion for summary judgment (doc. no. 47) is also denied without prejudice to filing a new motion. The parties are granted leave to file for any amendment of the scheduling order that this order may necessitate.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 21, 2017

cc: T. David Plourde, Esq.
    Linda B. Sullivan Leady, Esq.