**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Richard Villar

      v.                                    Civil No. 15-cv-270-LM
                                             Opinion No. 2018 DNH 141
Federal Bureau of Investigation


O R D E R

Richard Villar, a prisoner, brings this suit under the
Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), challenging
the refusal of the Federal Bureau of Investigation ("FBI") to
disclose certain documents and information that he requested
pursuant to that statute.  Following the court's order denying
the parties' motions for summary judgment without prejudice, the
FBI and Villar have filed second cross motions for summary
judgment.

**STANDARD OF REVIEW**

A movant is entitled to summary judgment if it "shows that
there is no genuine dispute as to any material fact and [that
it] is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  In reviewing the record, the court construes all
facts and reasonable inferences in the light most favorable to
the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108,

115 (1st Cir. 2013). "Where, as here, the parties have filed cross motions for summary judgment, the court applies the same standard applicable to all summary judgment motions, but considers the motions separately." Citizens for a Strong New Hampshire, Inc. v. I.R.S., No. 14-CV-487-LM, 2015 WL 5098536, at *3 (D.N.H. Aug. 31, 2015).

## BACKGROUND

I. Factual Background

In April 2006, Richard Villar was indicted on charges of bank robbery and conspiring with two others to commit bank robbery under 18 U.S.C. §§ 371 and 2113(a). The two co-conspirators pled guilty to the charges against them. Villar's case proceeded to trial, where a jury convicted him of bank robbery and conspiracy to commit bank robbery. Villar was sentenced to a 60-month sentence for one count and a concurrent 188-month sentence for the other count.

In May 2010, Villar sent the FBI a Freedom of Information Act and Privacy Act request letter, in which he requested all records or data in the FBI's possession stored "specifically under my name and /or an identifier assigned to my name." Doc. no. 43-3 at 1. Under a section in the letter entitled "SPECIFIC

REQUESTS," Villar requested several documents relating to Shauna Harrington, a witness who testified at his criminal trial.  That request included, among other things, interview notes, police reports, and criminal history about Harrington and any records of inducements that the government provided Harrington in exchange for her testimony.  Doc. no. 43-3 at 3.

Because Villar's request for records concerning Harrington could have included documents other than those covered by Villar's main request for the documents stored under his name, the FBI opened two separate requests.  The first request covered the records related to Villar.  The second request covered the FBI's records relating specifically to Harrington.

Pursuant to its policy for third-party requests, the FBI refused to search for any records about Harrington unless Villar provided authorization from Harrington, proof of Harrington's death, or a "clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records."  Doc. no. 43-4 at 1.

In response to the request concerning information about Villar, the FBI conducted a search of its records and identified

615 pages[1] of documents that were responsive.[2]  In September 2012, the FBI released 388 pages of documents to Villar, 126 of which contained redactions.  The FBI withheld the remaining 227 pages of documents in their entirety.  See doc. no. 43-2 at ¶ 86.  In support of its decision to not disclose all of the requested information, the FBI cited several exemptions to FOIA.

Villar appealed the FBI's response to his request for records stored under his name to the Department of Justice's Office of Information Policy.  The Office of Information Policy denied his appeal in June 2015.

II. Procedural Background

Villar then brought this suit, proceeding pro se,[3] asserting a FOIA claim against the FBI challenging the response to his FOIA request.  In addition, Villar brought claims against David Hardy, the Section Chief for the FBI's Records Management

---

[1] The FBI first informed Villar that it had identified 651 documents responsive to the request for records in his file.  See doc. no. 43-6.  The FBI now contends that there were 615 documents responsive to that request.  Doc. no. 43-2 at ¶ 86.

[2] Initially, the FBI refused to disclose any of the documents in Villar's files, asserting that they were part of a "pending or prospective law enforcement proceeding."  Doc. no. 43-8 at 1.  Villar successfully appealed that decision to the Department of Justice's Office of Information Policy, which remanded Villar's request back to the FBI.  See doc. no. 11.

[3] Villar has since obtained an attorney.

4

Division, and Brian Keefe, an FBI Special Agent. The court previously dismissed Villar's claims against Hardy and Keefe. Doc. no. 40.

Following that order, the parties filed cross motions for summary judgment on Villar's remaining FOIA claims. See doc. nos. 43 & 47. In its order on those motions, the court granted the FBI's motion for summary judgment on any claims arising out of Villar's request to search for records about Harrington because Villar had failed to exhaust his administrative remedies for that request. Doc. no. 53 at 10.

As to the request for records in Villar's file, the court denied both the FBI's and Villar's motions for summary judgment. With respect to the FBI's motion, the court concluded that the government's Vaughn index did not provide a sufficient factual basis to assess whether the withheld material was exempt from disclosure. With respect to Villar's motion, the court concluded that there were disputed issues of fact that precluded summary judgment. In addition, the court rejected Villar's argument that the FBI waived its right to assert certain FOIA exemptions by failing to raise those exemptions in its administrative response to him. The court's denial of the parties' motions for summary judgment, however, was without prejudice to them filing second motions for summary judgment.

**DISCUSSION**

The FBI and Villar move again for summary judgment on the remaining portion of Villar's FOIA claim concerning the records about him.[4]  In preparing its second motion for summary judgment, the FBI reconsidered its original withholdings, and, as a result, released in full twelve pages of documents that it originally withheld.  See doc. no. 55-4.  Accordingly, the FBI's motion now asserts that it properly withheld 215 pages in full and properly redacted material from another 126 pages.  The FBI contends that its withholdings and redactions are justified under FOIA Exemptions 6, 7(C), 7(D), and 7(E).  See 5 U.S.C. § 552(b)(6) and (b)(7)(C), (D), and (E).

In support, the FBI incorporates its original motion for summary judgment, which argued that the withheld material was

---

[4] Although Villar's FOIA request to the FBI sought all records stored under his name, the complaint that he filed in this action appears to seek only documents concerning Harrington, which is likely a much narrower universe of documents than that which the FBI withheld.  Despite pointing this fact out in its motion for summary judgment, the FBI's motion addresses all the material that it withheld in response to Villar's FOIA request, not just material concerning Harrington.  Villar's response to the FBI's motion concerns the disclosure of all withheld material, not just that concerning Harrington.  Because Villar was pro se when he filed his complaint, and because the parties appear to agree that the scope of Villar's FOIA claim challenges the entirety of the FBI's withholding, the court will construe Villar's FOIA claim in that manner.

exempt from disclosure under FOIA.  See doc. no. 43.  The FBI
also filed a second Vaughn index providing additional factual
support for its claimed exemptions.  In response, Villar argues
that the FBI's revised Vaughn index is inadequate and that the
FBI has improperly withheld in full numerous documents.
Finally, Villar argues that the court should view the withheld
documents in camera.

    In support of his motion for summary judgment, Villar
incorporates his objection to the FBI's first motion for summary
judgment, see doc. no. 45, which argued that the FBI's claimed
exemptions did not apply.[5]  In response, the FBI again
incorporates its original motion for summary judgment.

    FOIA requires federal agencies to make their records
available to any person upon request.  5 U.S.C. § 552(3).  FOIA
was "'enacted to facilitate public access to Government
documents' and 'designed to pierce the veil of administrative
secrecy and to open agency action to the light of public
scrutiny.'"  Union Leader Corp. v. U.S. Dep't of Homeland Sec.,
749 F.3d 45, 49-50 (1st Cir. 2014) (quoting U.S. Dep't of State
v. Ray, 502 U.S. 164, 173 (1991)).  "FOIA's basic policy of full
agency disclosure furthers the statute's essential purpose of

---

    [5] Villar also incorporated this document in support of his
first motion for summary judgment.  Doc. no. 47.

permitting citizens to know 'what their government is up to.'"
Id. at 50 (internal quotation marks omitted).

The statute's "right of access is not absolute, however, as
FOIA exempts certain categories of materials from disclosure in
order to effectuate the goals of the FOIA while safeguarding the
efficient administration of the government." Id. (internal
quotation marks omitted); see also 5 U.S.C. § 552(b) (providing
exemptions). "To fulfill the broad purposes of FOIA, [courts]
construe these exemptions narrowly." Stalcup v. C.I.A., 768
F.3d 65, 69 (1st Cir. 2014). "FOIA further mandates that 'any
reasonably segregable portion of a record shall be provided to
any person requesting such records after deletion of the
portions which are exempt under [section 552(b)].'" Carpenter v.
U.S. Dep't of Justice, 470 F.3d 434, 442 (1st Cir. 2006)
(quoting 5 U.S.C. § 552(b)).

"[T]he government agency bears the burden of proving the
applicability of a specific statutory exemption." Union Leader
Corp., 749 F.3d at 50. "That burden remains with the agency
when it seeks to justify the redaction of identifying
information in a particular document as well as when it seeks to
withhold an entire document." Id. (quoting Ray, 502 U.S. at
173). To meet that burden, "courts often require the
withholding agency to provide a 'Vaughn' index," which sets

forth the factual basis for the claimed exemptions.  Carpenter,
470 F.3d at 442.  In addition, "[t]he district court must
determine de novo whether the agency has met its burden."  Union
Leader, 749 F.3d at 50.

I.    Vaughn Index

Ordinarily, a Vaughn index "includes a general description
of each document sought by the FOIA requester and explains the
agency's justification for nondisclosure of each individual
document or portion of a document."  Church of Scientology Int'l
v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).  The
index serves the following three purposes:

> [I]t forces the government to analyze carefully any
> material withheld, it enables the trial court to
> fulfill its duty of ruling on the applicability of the
> exemption, and it enables the adversary system to
> operate by giving the requester as much information as
> possible, on the basis of which he can present his
> case to the trial court.

Id. at 228 (quoting Maynard v. C.I.A., 986 F.2d 547, 557 (1st
Cir. 1993)).

When assessing a Vaughn index, "[i]t is the function, not
the form, which is important, and the question is whether the
particular taxonomy employed afford[s] the FOIA requester a
meaningful opportunity to contest, and the district court an
adequate foundation to review, the soundness of the
withholding."  Id.  To satisfy this test, the index "must supply

a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Id. (internal quotation marks omitted). This justification must also include a factual basis supporting the agency's segregability conclusion. Id. at 230-31. In practical terms, this means that when an agency withholds a document in full or several pages of a document in full, it must explain why the withheld material does not contain any other segregable and disclosable material. Id. at 230-33.

In support of its first motion for summary judgment, the FBI submitted a coded Vaughn index. See doc. no. 43-26. That filing relied on a series of justification codes. As explained in the second declaration of David M. Hardy, doc. no. 43-2, each code referred to a specific category of material that, the FBI contended, was exempt from disclosure under specific statutory exemptions, id. at ¶ 54. For pages that the FBI disclosed in redacted form, the agency stamped a justification code on the face of the document next to the corresponding redaction to explain the basis for withholding the material. For pages withheld in full, the FBI provided a table that identified the page number withheld and referenced an exemption code to justify that withholding. The FBI did not provide descriptions of the

documents or specific descriptions of the material it withheld. Rather, the second Hardy declaration generally described the category of material that the FBI argued was exempt under each code.

In its order on the parties' first motions for summary judgment, the court acknowledged that the First Circuit has approved of the use of coded indices in certain circumstances. Doc. no. 53 at 13-15 (citing Maynard, 986 F.2d at 559 & 559 n.13). Nevertheless, the court concluded that the FBI's index was insufficient for two principal reasons. Id. at 15-16. First, the index did not describe the contents of the documents for which it was claiming an exemption to FOIA's disclosure requirement. Id. For the pages that the FBI had withheld in full, the lack of description of those pages' contents made it functionally impossible for Villar or the court to evaluate the applicability of the claimed exemptions. Second, the FBI failed to demonstrate that it had conducted an appropriate segregability analysis and instead relied on conclusory assertions about segregability in the second Hardy declaration. Id. at 16.

In support of its renewed motion for summary judgment, the FBI has submitted a new Vaughn index. See doc. no. 55-3. The FBI contends that this index explains its withholdings in more

detail and cures the problems that the court identified in its previous order.  In response, Villar argues that the new index fails because, like the FBI's last submission, this one does not "attempt to particularize each exemption to the actual document withheld" and relies exclusively on "the generalized description[s] contained in the Hardy Declaration."  Doc. no. 56-1 at 1-2.

The court agrees with the FBI that its new index is sufficient.  Unlike its first index, the new index identifies and describes each document that the FBI has withheld in full or in part.  This provides meaningful context that allows Villar and the court to evaluate the applicability of the FBI's claimed exemptions.  In addition, the index describes the specific content in each document that the FBI has withheld and provides a justification for why that material is exempt.[6]  Although, as Villar notes, these justifications often match the same generalized justifications that the FBI relied on in its original motion for summary judgment, they are now linked to a description of the specific withheld material.  The FBI, therefore, has particularized these justifications to the withheld material.  Finally, the FBI's new index also explains

_____

[6] This description is located in the section in each entry entitled "segregability analysis."

why it concluded that the withheld material contained no segregable, disclosable information.

Because of these features, the new index provides a sufficient factual basis to allow both Villar and the court to evaluate the applicability of the claimed exemptions and whether the FBI conducted a proper segregation analysis.

## II. FOIA Exemptions

The FBI contends that its withholdings are justified under FOIA exemptions b(6), b(7)(C), b(7)(D), and b(7)(E). See 5 U.S.C. § 552(b) (setting forth exemptions to FOIA's disclosure requirement). In response, Villar argues that the exemptions are not applicable.

### A. Exemptions 6 and 7(C)

Pursuant to Exemptions 6 and 7(C), the FBI has withheld responsive material that contains the names or other identifying information of third parties. Specifically, this material includes the names and identifying information of government and law enforcement personnel and other third parties with a connection to Villar's criminal investigation. For each record that the FBI claims is exempt from disclosure under Exemption 6, it also asserts Exemption 7(C) as a separate basis for its withholding.

FOIA Exemption 6 exempts from FOIA's disclosure requirement "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 7(C) exempts from FOIA's disclosure requirement "records or information compiled for law enforcement purposes . . . to the extent that the production of such [] records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c).

The statutory language in Exemption 6, which requires that the disclosure actually constitute "a clearly unwarranted" invasion of personal privacy, "is less protective of personal privacy than Exemption 7(C) . . . ." Union Leader, 749 F.3d at 50 n.4.  Accordingly, when an agency asserts both exemptions to justify withholding material that has been compiled for law enforcement purposes, "[the court] need not address Exemption 6 separately because 'all information that would fall within scope of Exemption 6 would also be immune from disclosure under Exemption 7(C).'" Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 250 n.4 (1st Cir. 2013) (internal quotation marks omitted); Union Leader, 749 F.3d at 50 n.4.  Because there is no dispute that the records at issue here were compiled for law enforcement

purposes, the court will assess only the applicability of Exemption 7(C).

"To determine whether the government may rely on Exemption 7(C) to withhold documents, [the court] balance[s] the privacy interest at stake in revealing the materials with the public interest in their release." Eil v. U.S. Drug Enf't Admin., 878 F.3d 392, 398 (1st Cir. 2017) (internal quotation marks omitted).  The Supreme Court has observed "that an individual's privacy interest is 'at its apex' when he or she is involved in a law enforcement investigation."  Stalcup, 768 F.3d at 73 (quoting Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 166 (2004)).  Once the government demonstrates that a legitimate privacy interest recognized under Exemption 7(C) is present, "the party seeking disclosure must show (1) that there is a 'significant' public interest in disclosure, and (2) that the requested information is 'likely to advance that interest.'" Eil, 878 F.3d at 398 (quoting Favish, 541 U.S. at 172).

1.  Privacy Interests

In support of its withholdings, the FBI contends that the third parties identified in the withheld material have substantial privacy interests in not having their participation or connection to a criminal investigation revealed.  In interpreting Exemption 7(C), the "[Supreme] Court has rejected

15

'cramped notion[s] of personal privacy,' [U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 763 (1989)], and instead has interpreted the exemption as 'protect[ing] a broad notion of personal privacy, including an individual's interest in avoiding disclosure of personal matters,' Carpenter, 470 F.3d at 438." Union Leader, 749 F.3d at 50-51. Therefore, the privacy interest "encompasses the individual's control of information concerning his or her person, and when, how, and to what extent information about them is communicated to others." Carpenter, 470 F.3d at 438 (internal quotation marks and alterations omitted).

Consistent with this privacy interest, the Supreme Court has emphasized that the "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." Carpenter, 470 F.3d at 438-39 (quoting Reporters Comm., 489 U.S. at 765-66). Rather, "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." Id. (quoting Reporters Comm., 489 U.S. at 774).

a.    <u>Private Parties Mentioned in FBI Files</u>

Pursuant to Exemption 7(C), the FBI has withheld the names and identifying information of people of investigative interest, including Villar's co-conspirators, people who provided information to the FBI, and people who are mentioned in the agency's records because they came into contact with the FBI's investigation.  In support, Hardy asserts in his second declaration that these individuals have strong privacy interests in keeping their identity confidential.  Hardy states that revealing the identity of these third parties and thereby positively associating them with a criminal investigation would create a negative stigma.  Hardy also contends that disclosing the identity of individuals who participated in or were connected to the criminal investigation could expose them to harassment or reprisal.

In response, Villar argues that Harrington and his two co-conspirators have diminished privacy interests because they have been arrested.  Villar also contends that his two co-conspirators have no privacy interests in the withheld information because they waived those interests when they signed plea agreements with the government.

"Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad

privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure." Ortiz v. United States Dep't of Justice, 67 F. Supp. 3d 109, 121 (D.D.C. 2014) (internal quotation marks omitted). Therefore, the class of individuals who possess a privacy interest under Exemption 7(C) is broad and includes investigatory targets, those who provide information to law enforcement, and third parties mentioned in investigative files. See Maynard, 986 F.2d at 566 (observing that "confidential sources . . . and investigatory targets . . . have significant privacy interests in not having their names revealed."); Carpenter, 470 F.3d at 439 (recognizing privacy interest of witnesses, informants, and those who provide information to law enforcement); Moffat, 716 F.3d at 251 (recognizing privacy interests of people merely mentioned during law enforcement interviews); Jett v. Fed. Bureau of Investigation, 241 F. Supp. 3d 1, 12–13 (D.D.C. 2017) (protecting identity of individuals mentioned in FBI files); Hertz Schram PC v. F.B.I., No. 12-CV-14234, 2014 WL 764682, at *12 (E.D. Mich. Feb. 25, 2014) (same).

Nevertheless, Villar contends that three particular people, Harrington and Villar's two co-conspirators, possess a diminished privacy interest because they have been arrested for crimes. In support, Villar relies on Union Leader. In that

case, the First Circuit considered whether Exemption 7(C)
permitted the United States Immigration and Customs Enforcement
to redact the names of six aliens from forms that contained
summaries of the aliens' arrest and criminal conviction history.
749 F.3d at 49.  The First Circuit held that Exemption 7(C) did
not shield the names from disclosure.  Id. at 56.

In doing so, the First Circuit acknowledged that Supreme
Court precedent "makes clear that . . . arrestees do indeed have
a privacy interest concerning their underlying convictions and
arrests."  Id. at 51 (citing Reporters Comm., 489 U.S. at 762
n.13).  The court, however, concluded that those privacy
interests were diminished because the information concerning
their convictions and arrests was already in the public domain.
Id. at 53 ("[A]lthough the arrestees have a cognizable privacy
interest in their names, that interest is attenuated both by the
status of their underlying convictions and arrests as matters of
public record and by the limited nature of the Union Leader's
proposed investigation.").  After balancing those diminished
interests against what the court concluded was a valid public
interest in disclosure proffered by the plaintiff, the court
held that Exemption 7(C) was inapplicable.  Id. at 56.

Union Leader does not weigh in favor of disclosure here.
Contrary to Villar's assertion, Union Leader does not adopt a

broad rule "that the privacy interests of arrestees are less than that of ordinary citizens." Doc. no. 45 at 6. Rather, Union Leader holds that arrestees possess a diminished privacy interest in information about their arrests and criminal convictions, because that information is a matter of public record. Id. at 55. Here, Villar points to no specific information that he seeks that is already in the public record, and a review of the FBI's Vaughn index demonstrates that much of the withheld information is likely nonpublic. For example, the FBI has withheld information detailing third-party interviews with its agents, information about the investigation into Villar's co-conspirators (neither of whom ever had public trials), and other internal FBI memoranda.

Harrington and Villar's two co-conspirators have a legitimate privacy interest in preventing the disclosure of this nonpublic material. Carpenter, 470 F.3d at 439 (concluding that even if a person's identity is known it is "a further invasion of [that person's] protected privacy interest to positively identify him with a given criminal matter and reveal the records or information that he provided"); Burge v. Eastburn, 934 F.2d 577, 579–80 (5th Cir. 1991) (concluding that trial witnesses had privacy interest in not revealing the nonpublic information they provided to investigators).

Moreover, to the extent there is any publicly available information in the withheld material, that information is still exempt from disclosure under Exemption 7(C). That is because, as discussed in detail below, Villar has not demonstrated a legitimate public interest favoring disclosure that could outweigh even a diminished privacy interest in the withheld material. See Maynard, 986 F.2d at 566 ("Plaintiff here has failed to suggest how the disclosure of the names would reveal what the government is up to. We need not, therefore, dwell upon the balance between privacy and public interests: something outweighs nothing every time." (internal quotation marks and alterations omitted)). Therefore, the fact that Harrington and Villar's co-conspirators are arrestees does not weaken their respective privacy interests to the point where disclosure is warranted.

Villar also contends that the FBI cannot assert the privacy interests on behalf of his co-conspirators because each of them waived those interests when pleading guilty to offenses related to the bank robbery. In support, Villar relies on a provision in his co-conspirators plea agreements, in which they agreed to waive "all rights . . . to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including

without limitation any records that may be sought under the
Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act
of 1974, 5 U.S.C. § 552a." See <u>United States v. Joshua Gagnon</u>,
06-CR-85-PB-02, Doc. no. 28 at 12 (D.N.H.); <u>United States v.
Dedra Scott</u>, 06-CR-85-PB-03, Doc. no. 46 at 12 (D.N.H.). Under
the plain terms of the provision on which Villar relies, his co-
conspirators waived the right to <u>request</u> documents under FOIA,
not the privacy rights that FOIA protects. Accordingly,
Villar's waiver theory fails.

Therefore, the court concludes that the FBI has demonstrated
a valid privacy interest on behalf of the private third parties
mentioned in the withheld documents.

### b. <u>Law Enforcement and Government Officials</u>

Pursuant to Exemption 7(C), the FBI has withheld the names
and identifying information of law enforcement personnel and
government officials, including FBI special agents and support
personnel, local and state law enforcement personnel, and non-
FBI federal government personnel. In support of the asserted
privacy interest, Hardy contends in his second declaration that
disclosing the identity of these government employees to the
public would expose them to harassment and potential reprisal.
In response, Villar argues that government officials possess a
diminished privacy interest in protecting their identities.

The First Circuit has held that law enforcement and other government personnel possess significant privacy interests in not having their names or involvement in a criminal investigation revealed.  Moffat, 716 F.3d at 251-52 (concluding that FBI properly withheld information about FBI personnel and characterizing privacy interests at stake as "substantial"); Maynard, 986 F.2d at 566 (upholding refusal to disclose names of FBI agents and support personnel because those individuals "have significant privacy interests in not having their names revealed."); Sensor Sys. Support, Inc. v. F.A.A., 851 F. Supp. 2d 321, 334-35 (D.N.H. 2012) ("Law enforcement personnel have significant privacy interests in keeping their names or other identifying information from being generally disclosed.").  The First Circuit has explained that recognition of this privacy interest is appropriate because:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties.  Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

New England Apple Council v. Donovan, 725 F.2d 139, 142 (1st Cir. 1984) (quoting Miller v. Bell, 661 F.2d 623, 630 (7th Cir. 1981), abrogated in part on other grounds by U.S. Dep't of Justice v. Landano, 508 U.S. 165, 181 (1993)).

Villar, however, cites Perlman v. U.S. Dep't of Justice, 312 F.3d 100, 103 (2d Cir. 2002), cert. granted, judgment vacated sub nom. Perlman v. Dep't of Justice, 541 U.S. 970 (2004). In Perlman, the Second Circuit explained that while government employees possess a "somewhat diminished" privacy interest, they do "not surrender all rights to personal privacy." Perlman, 312 F.3d at 107. To the extent Perlman holds that government employees do not maintain a significant privacy interest, it contradicts First Circuit precedent and is, therefore, not applicable here. Moreover, as explained above, even if the government employees in this case possess a diminished privacy interest, disclosure is still not warranted because Villar has not demonstrated any public interest in favor of disclosure that would outweigh even a diminished privacy interest. Therefore, Perlman does not support disclosure of the identity of government agents here.

Accordingly, the court finds that the law enforcement personnel and government agents referenced in Villar's FBI file possess a privacy interest in not having their identities revealed.

2.   Public Interest in Disclosing Information

Villar argues that there is a public interest in obtaining information that could "corroborate his claim of innocence."

Doc. no. 45 at 9.  Specifically, Villar contends that the information he seeks could show that the government failed to disclose evidence that it provided benefits to Harrington in exchange for her trial testimony.  In response, the government asserts that Villar's assertions are too speculative to establish a public interest in disclosure.

As discussed above, because the FBI has asserted legitimate privacy interests, Villar must show "(1) that there is a 'significant' public interest in disclosure, and (2) that the requested information is 'likely to advance that interest.'" Eil, 878 F.3d at 398 (quoting Favish, 541 U.S. at 172). "Whether an invasion of privacy is unwarranted will 'turn on the nature of the requested document and its relationship to the basic purpose of the [FOIA] to open agency action to the light of public scrutiny.'" Carpenter, 470 F.3d at 440 (quoting Reporters Comm., 489 U.S. at 772).

"[T]he innocence or guilt of a particular defendant tells the [c]ourt nothing about matters of substantive law enforcement policy that are properly the subject of public concern." Moffat, 716 F.3d at 252 (quoting Carpenter, 470 F.3d at 441). "But this is not to say that information requested by a criminal defendant may never implicate the public interest." Id. Rather, a FOIA requester challenging his or her conviction must

"connect his deeply personal stake in [the requested] information to a larger governmental function." Moffat, 716 F.3d at 252.

For example, a disclosure that "could shed light on possible government misconduct" could serve the public interest. Carpenter, 470 F.3d at 441. When such an interest is asserted, however, "'the requester must establish more than a bare suspicion in order to obtain disclosure.'" Id. (quoting Favish 541 U.S. at 174). "Rather, 'the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" Id. (quoting Favish 541 U.S. at 174).

In support of his claim that the government provided undisclosed benefits to Harrington in exchange for her testimony, Villar points to evidence that an FBI special agent and a prosecutor declined to arrest Harrington at a pre-trial interview after she informed them that there could be a warrant out for her arrest. At Villar's trial, Harrington testified that she informed the prosecutor and the agent that there could be an arrest warrant for her stemming from her failure to appear in court to answer drug charges in Massachusetts. Doc. no. 24-1 at 36, 48-49. Harrington further testified that the agent did not arrest her because she was scheduled to enter a

26

rehabilitation facility the following day.  Id. at 36.
Harrington also testified that she intended to resolve the issue
concerning her failure to appear for court.  Id.

     Prior to his cross examination of Harrington, Villar's
counsel requested the disclosure of any benefits that the
government provided Harrington in exchange for her testimony.
In response, the prosecutor informed the court that all Jencks
and Giglio material had been provided to Villar's counsel and
further stated that "we have nothing to do whatsoever with her
rehab."  Doc. no. 24-1 at 45.

     Villar presents no evidence—beyond naked speculation—that
the government's representations during his criminal trial were
false.  Further, Villar points to no authority, and the court is
aware of none, that requires federal agents to execute an arrest
warrant, particularly one originating from a different
jurisdiction.  Rather, law enforcement traditionally has
discretion in deciding whether to arrest someone when it has
legal authority to do so.  See Town of Castle Rock, Colo. v.
Gonzales, 545 U.S. 748, 760–61 (2005) (observing that there is a
"well established tradition of police discretion" when deciding
whether to execute legal authority to arrest a person); Robinson
v. Lioi, 536 F. App'x 340, 345 (4th Cir. 2013) (noting that "a
police officer has discretion in the execution of arrest

warrants" (citing Castle Rock, 545 U.S. at 764)).  Moreover, Harrington's scheduled treatment in a rehabilitation facility the next day is a plausible reason why the agent declined to arrest her.   In short, there is no evidence in the record "that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Carpenter, 470 F.3d at 442 (internal quotation marks omitted).   Therefore, Villar has not demonstrated that a valid public interest supports disclosure.

Because no valid public interest favoring disclosure has been shown, the legitimate privacy interests that the FBI has asserted preclude disclosure of the documents at issue. Accordingly, the FBI properly withheld the material containing information about third parties under Exemption 7(C).

B.    Exemption 7(D)

The FBI withholds material that, it contends, will disclose the names and identifying data of confidential sources, as well as the information provided by those sources.  In response, Villar argues that the FBI has failed to demonstrate that the sources at issue were confidential sources under the statute. Villar also argues that the FBI cannot raise Exemption 7(D) because it failed to raise that exemption in its administrative response to him.

Exemption 7(D) to FOIA exempts from "disclosure agency records 'compiled for law enforcement purposes . . . by criminal law enforcement authority in the course of a criminal investigation' if release of those records 'could reasonably be expected to disclose' the identity of, or information provided by, a 'confidential source.'" Landano, 508 U.S. at 167 (quoting § 552(b)(7)(D)). "Unlike under 7(C), if the government demonstrates that the information requested was given under an assurance of confidentiality, 7(D) does not require a further showing that privacy interests outweigh any public interest in disclosure." Moffat, 716 F.3d at 252-53. "Thus, Exemption 7(D) provides greater protection to a narrower class of persons than does 7(C)." Id. (internal quotation marks omitted).

## 1. Waiver of Exemption

In his objection to the FBI's original motion for summary judgment, Villar argued that the FBI waived its right to assert Exemption 7(D) because it did not raise those exemptions in its administrative response to him. The court rejected this theory in its order disposing the parties' original motions for summary judgment. In doing so, the court concluded that an "agency cannot 'waive' its right to invoke an exception prior to suit." Doc. no. 53 at 18 (quoting Hodes v. U.S. Dep't of Hous. & Urban Dev., 532 F. Supp. 2d 108, 114 n.2 (D.D.C. 2008) and citing

Adamowicz v. I.R.S., 552 F. Supp. 2d 355, 361 n.2 (S.D.N.Y. 2008)).

To the extent Villar intended to raise this argument again by incorporating his response to the FBI's original motion for summary judgment, that argument fails. Villar has presented no argument as to why the court should reconsider his waiver theory. Therefore, the court denies Villar's motion for summary judgment to the extent it relies on the waiver theory.

### 2. Confidentiality of Source

Here, the FBI contends that two of the sources it is protecting were operating under express grants of confidentiality, while the rest were operating under implied grants of confidentiality. In response, Villar contends that the FBI has not adequately demonstrated that a grant of express confidentiality existed for the sources.

### a. Express Grants of Confidentiality

Where an agency asserts that a source provided information under an express grant of confidentiality, "it is required to come forward with probative evidence that the source did in fact receive an express grant of confidentiality.'" Dorsey v. Exec. Office for United States Attorneys, 83 F. Supp. 3d 347, 356 (D.D.C. 2015) (quoting Davin v. U.S. Dep't of Justice, 60 F.3d

1043, 1061 (3d Cir. 1995)), aff'd in part, remanded in part sub nom. Dorsey v. Exec. Office for U.S. Attorneys, No. 15-5104, 2016 WL 1272941 (D.C. Cir. Feb. 10, 2016).

In support of its argument that the two sources at issue were provided express assurances of confidentiality, the FBI relies on the second Hardy declaration. In that declaration, Hardy states that the FBI provided both sources with an express grant of confidentiality. As further evidence in support of that assertion, Hardy asserts that the FBI paid one source for his or her assistance "as a non-source symbol numbered informant." Doc. no. 43-2 at ¶ 72.[7] Hardy further asserts that this source's name was annotated with the words "Protect Identity" after their name in internal FBI documents. Id.

As for the other source, Hardy states that this source expressly asked for confidentiality. In addition, Hardy attests that the FBI also used the words "Protect Identity" next to this source's name in its investigatory records.

Based on this evidence, the court concludes that both sources were provided express grants of confidentiality.

---

[7] Hardy explains in his second declaration that a source symbol number is provided to individuals providing information over an extended period.

b.    Implied Grants of Confidentiality

In support of its assertion that the remaining sources provided information under an implied assurance of confidentiality, the FBI points to the violent nature of the crime at issue and the sources' role in providing information that led to the indictment.

Although not every source who provides information to the FBI is a "confidential" source under Exemption 7(D), the government may point to circumstances that support an inference that a source was cooperating under an implied assurance of confidentiality. Landano, 508 U.S. at 179. In doing so, the relevant question is "whether the particular source spoke with an understanding that the communication would remain confidential." Sandoval v. U.S. Dep't of Justice, No. CV 16-1013 (ABJ), 2017 WL 5075821, at *12 (D.D.C. Nov. 2, 2017) (quoting Landano, 508 U.S. at 172). In determining whether such an understanding was present, courts have "examin[ed] factors such as the nature of the crime and the source's relation to it." Landano, 508 U.S. at 179.

Based on those factors, courts have generally concluded that "[c]rimes involving violence and the risk of retaliation warrant an implied grant of confidentiality." Island Film, S.A. v. Dep't of the Treasury, 869 F. Supp. 2d 123, 137 (D.D.C. 2012)

(citing cases).  In that same vein, courts have found that sources who provide information about armed robbery do so under an implied grant of confidentiality.  Thomas v. U.S. Dep't of Justice, 531 F. Supp. 2d 102, 111–12 (D.D.C. 2008) (violent nature of bank robbery warranted finding of implied grant of confidentiality); Meserve v. U.S. Dep't of Justice, No. CIV.A. 04-1844 (RBW), 2006 WL 2366427, at *9 (D.D.C. Aug. 14, 2006) (finding implied grant of confidentiality for sources who provided information about an armed robbery).

In addition, the case for finding an implied grant of confidentiality is greater when the source has been able to provide information about the crime that is "singular in nature," meaning that it is "the kind of information that, if it were revealed to the public, could be traced to a particular source."  Labow v. U.S. Dep't of Justice, 831 F.3d 523, 531–32 (D.C. Cir. 2016); see also 3 Federal Information Disclosure § 17:102 (citing Labow and making the same point).

In his second declaration, Hardy asserts that the sources "provided assistance and valuable information specific in nature throughout the armed bank robbery investigation," and that their assistance helped lead to the indictment of Villar and his co-conspirators.  Doc. no. 43-2 at ¶ 74.  Hardy further asserts that the sources provided information that was "singular in

nature, and if released could reveal their identities." Id. at

¶ 70.  Hardy also asserts that "[a]ll of the individuals could

reasonably fear that disclosure of their identities would place

them in danger of possible retaliation, harassment, and/or could

reasonably be expected to cause them physical harm, especially

due to the violent nature of the crime under investigation."

Id. at ¶ 75.

Based on the foregoing statements, the court concludes that

the sources at issue were operating with an understanding that

their participation would remain confidential.  Therefore, the

information identifying those sources and the information they

provided is exempt from disclosure.


C.    Exemption 7(E)

Pursuant to Exemption 7(E), the FBI has withheld material

that it contends would reveal nonpublic investigative techniques

and procedures or nonpublic aspects of its known investigative

techniques and procedures.  In support, the FBI argues that this

information is exempt from FOIA because its disclosure would

allow criminals to circumvent the law.  The only argument that

Villar raises in objection to the application of Exemption 7(E)

is his argument that the FBI waived its right to assert that

exemption because it did not raise the exemption in its

administrative response to him.  As discussed above, however, the court has rejected that theory.

Exemption 7(E) exempts from FOIA's disclosure requirement all agency "records of information compiled for law enforcement purposes, but only to the extent that the production of such [records]. . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  To withhold records containing information about techniques or procedures under Exemption 7(E), the agency must show "(i) that the withheld records or information would disclose techniques and procedures for law enforcement investigations and (ii) that their disclosure would reasonably risk circumvention of the law." Sack v. U.S. Dep't of Def., 823 F.3d 687, 694 (D.C. Cir. 2016).[8]

_____

[8] Other circuit courts of appeal have concluded that the circumvention of law requirement "applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and procedures." Am. Civil Liberties Union of N. California v. United States Dep't of Justice, 880 F.3d 473, 491 (9th Cir. 2018); Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 681–82 (2d Cir. 2010). The First Circuit has not addressed this issue.  Because the FBI has demonstrated that the release of the techniques and procedures at issue here would indeed risk the circumvention of

When assessing whether an agency has demonstrated that disclosure would risk the circumvention of law, courts:

> Look[] not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011) (internal quotation marks omitted).  Accordingly, to withhold documents pursuant to Exemption 7(E), the FBI need not meet a highly specific burden, but rather must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  Id.

Here, the FBI has withheld information about bank security measures, its modus operandi tracking, its collection and analysis of information, statistical ratings of its investigative techniques, and certain monetary payments that it made for investigative purposes.  The FBI contends that this information must be withheld because its disclosure will risk the circumvention of law.

---

law, the court need not consider whether the circumvention of law requirement applies to all records in Exemption 7(E)'s ambit.

1.    Bank Security Measures

The FBI withheld information providing details about the various security measures that were at the bank, including surveillance equipment, other security devices, and bait money, which is money that the FBI uses to track criminals following the commission of a robbery.  In his second declaration, Hardy asserts that the withheld material provides details about the types of security measures present at the robbery, how they were implemented, and where they were located.  Hardy further asserts that if this information were disclosed, would-be criminals could use it to devise countermeasures to avoid bank security.

Courts have generally held that information about bank security measures is exempt from FOIA disclosure under Exemption 7(E) because revealing such information would risk the circumvention of law.  See, e.g., Ford v. Dep't of Justice, 208 F. Supp. 3d 237, 254 (D.D.C. 2016) (bank surveillance video properly withheld under Exemption 7(E)); Maguire v. Mawn, No. 02-2164, 2004 WL 1124673, at *3 (S.D.N.Y. May 19, 2004) (concluding that information about bait money exempt); Rivera v. FBI, No. 98-0649, slip op. at 9-10 (D.D.C. Aug. 31, 1999) (holding that information about bank security measures is exempt under Exemption 7(E)); Dayton Newspapers, Inc. v. FBI, No. C-3-85-815, 1993 WL 1367435, at *6 (S.D. Ohio Feb. 9, 1993)

(concluding that agency properly withheld details of bank security devices and equipment used in bank robbery investigation); Malloy v. U.S. Dep't of Justice, 457 F. Supp. 543, 545 (D.D.C. 1978) (approving withholding of information about bank security devices and bait money).

The court finds the reasoning of these cases persuasive. Accordingly, the FBI has satisfied its burden of demonstrating that the disclosure of the information at issue could risk the circumvention of law. Therefore, the information concerning bank security measures was properly withheld.

2.    Modus Operandi Tracking

The FBI redacted information in one page detailing the bank robbery techniques it tracks as markers of a criminal's modus operandi. In his second declaration, Hardy asserts that disclosing the variety of robbery techniques that it tracks in connection with its modus operandi summaries "would give criminals additional techniques to possible [sic] use in future robberies." Doc. no. 43-2 at ¶ 81. The court finds that the FBI has logically demonstrated why disclosure of the modus operandi summaries would risk a circumvention of the law.

3.    Collection and Analysis of Information

The FBI redacted material from two pages detailing the methods it uses to collect and analyze the information it obtains for investigative purposes.  In his second declaration, Hardy contends that disclosing this information would provide criminals knowledge of these FBI techniques, including when specific techniques are used, and the usefulness of the information obtained from them.  Hardy further asserts that this knowledge would allow criminals to deploy countermeasures that limit the effectiveness of the techniques.

The court agrees that criminals, armed with the knowledge of these investigative techniques, could develop methods to counter the techniques' effectiveness and thereby circumvent the law.  Courts that have considered whether such information qualifies for exemption under Exemption 7(E) have come to the same conclusion.  Shapiro v. Cent. Intelligence Agency, 247 F. Supp. 3d 53, 71-72 (D.D.C. 2017) (holding that information concerning collection and analysis methods is exempt from disclosure); Johnson v. Fed. Bureau of Investigation, No. CV 14-1720, 2016 WL 5162715, at *6 (E.D. Pa. Sept. 21, 2016) (same).  Therefore, the FBI has demonstrated that disclosing information about its collection and analysis methods could risk circumvention of the law.

4.    Statistical Information

The FBI redacted portions of FD-515s (its form for tracking certain law enforcement milestones) which contain statistical ratings of the effectiveness of over 40 publicly known investigative techniques.  Hardy asserts that disclosure of this information would risk circumvention of law because this information could allow criminals to "change their activities and modus operandi in order to circumvent and avoid detection and/or surveillance in the future."  Doc. no. 43-2 at ¶ 83.  Hardy also states that "[b]y understanding which techniques are the most effective, criminals have knowledge of the techniques they need most to avoid in order not to be apprehended."  Id.

These assertions sufficiently demonstrate that disclosure of the statistical ratings would risk the circumvention of law.  See Frankenberry v. F.B.I., 567 F. App'x 120, 125 (3d Cir. 2014) (affirming district court's finding that statistical ratings could be withheld under Exemption 7(E)); Westmoreland v. Fed. Bureau of Investigation, No. CV 13-2058(CKK), 2015 WL 5063181, at *6 (D.D.C. Aug. 26, 2015) (permitting the FBI to redact statistical rating information about investigative techniques); Rosenberg v. U.S. Dep't of Immigration & Customs Enf't, 959 F. Supp. 2d 61, 80 (D.D.C. 2013) (same).  Accordingly, the FBI

properly redacted the statistical ratings from the FD-515s in Villar's file.

### 5. Monetary Payments

The FBI redacted information in three pages of an internal communication, which detailed a request for a payment to a source.  Hardy asserts that the redacted information contains details about the amount paid to the source and the justifications supporting that payment.  In support of his assertion that this information is exempt, Hardy contends that "[r]evealing the amount of money the FBI has paid (or it plans to pay for particular aspects of an investigation) would reveal the FBI's level of focus on certain types of law enforcement or intelligence gathering efforts."  Although this reasoning presents an attenuated connection to potential circumvention of law, the court nevertheless concludes that the risk is logical enough for the FBI to meet its burden under Exemption 7(E).

Disclosing the amount of the payment and the justifications for that payment would likely reveal strategic decisions underlying the FBI's law enforcement methods.  Poitras v. Dep't of Homeland Sec., No. CV 15-1091 (BAH), 2018 WL 1702392, at *13 (D.D.C. Mar. 29, 2018) (concluding that FBI properly withheld information about the amount of money it used to implement certain investigative techniques because disclosing such

information would "reveal sensitive strategic decisions made by the FBI"); see also Johnson v. Fed. Bureau of Investigation, No. CV 14-1720, 2016 WL 5162715, at *6 (E.D. Pa. Sept. 21, 2016) (concluding that the FBI properly withheld information about monetary payments). Were this strategic information to be disclosed, criminals would have knowledge from which they could infer how much resources the FBI devotes to certain crimes or in certain situations. This, in turn, could result in criminals changing their activities to reduce the risk of apprehension. Accordingly, the FBI properly withheld information concerning the monetary payments made for investigative techniques, which it asserted under Exemption 7(E).

III. Segregability

The FBI contends that it has satisfied its burden of demonstrating segregability by providing a more detailed Vaughn index and a declaration that attests that it has released all segregable material. In response, Villar argues that the FBI "fails to explain its conclusions that each withheld document contains no segregable, disclosable material . . . ." In addition, Villar challenges the FBI's withholding in full of several pages under Exemptions 7(C) and 7(D) based on their references to third parties. Villar argues that those pages "could [have been] provided with identification of the [FBI

agents] and third party individuals redacted . . . ."  Doc. no. 56-1 at 2.

FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such records after deletion of the portions which are exempt under [section 552(b)]."  Carpenter, 470 F.3d at 442–43 (quoting 5 U.S.C. § 552(b)).  "Non-exempt information or materials may be withheld only where it 'is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden.'"  Id. (quoting Church of Scientology Int'l, 30 F.3d at 228).  Further, when an agency properly invokes Exemption 7(C) or 7(D) to protect the identity of an individual, it may withhold all information that could reasonably be expected to disclose that individual's identity.  See Boyd v. Exec. Office for United States Attorneys, 161 F. Supp. 3d 1, 11 (D.D.C. 2015), aff'd by Court of Appeals, No. 16-5133, 2016 WL 6237850 (D.C. Cir. Sept. 16, 2016) ("[W]here a person's identity might be revealed based on the content of the document, courts have permitted agencies to withhold the records in their entirety under Exemption 7(C)"); 5 U.S.C. § 552(b)(7)(D) (exempting information or records that "could reasonably be expected to disclose the identity of a confidential source").

"An agency bears the burden of demonstrating that all reasonably segregable portions of a record have been disclosed, and may do so by 'offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption.'" Competitive Enter. Inst. v. U.S. Dep't of Treasury, No. CV 12-1838-RMC, 2018 WL 1587468, at *6 (D.D.C. Apr. 2, 2018) (quoting Pac. Fisheries, Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008)).

In his second declaration, Hardy asserts that "[e]very effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information in the responsive records." Doc. no. 43-2 at ¶ 54. Hardy further attests that "[n]o reasonably segregable, nonexempt portions have been withheld from plaintiff." Id. Although in its order on the parties' first motions for summary judgment, the court concluded that these assertions were conclusory, the FBI, through its second Vaughn index, has provided more detail to support them. As discussed above, each entry in the new Vaughn index contains a segregability analysis which identifies and describes the withheld material in each document and provides a reason why that material is exempt from disclosure.

After reviewing these entries and the coded documents that
the FBI provided to Villar, the court is satisfied that the FBI
conducted a proper segregability analysis.  Many of the pages of
documents released to Villar were released in part, in redacted
form.  These documents contain pinpoint redactions, which are
narrow in scope and only excise the exempt material, such as the
names or other identifying information of law enforcement
personnel or third parties.  These targeted redactions support
Hardy's assertion that the FBI conducted a detailed
segregability analysis.  Sennett v. Dep't of Justice, 962 F.
Supp. 2d 270, 279–80 (D.D.C. 2013).

Further, for pages withheld in full the FBI has
sufficiently explained what the withheld material is and why
withholding it is justified under FOIA.  For most of the pages,
the FBI has explained that any nonexempt information is so
intertwined with exempt material that no information could be
reasonably segregated for release and any effort to do so would
produce disjointed words, phrases, or sentences that provide no
informational value.  In addition, the FBI has explained that it
was necessary to withhold several pages in full because they
contain information that would likely disclose the identity of a
third party whose privacy is protected under an exemption.

Based on its review of the FBI's submission, including the careful redactions in the pages that it released to Villar, the court credits the FBI's assertion that it conducted a proper segregability analysis on these documents.

In doing so, the court rejects Villar's argument that the FBI improperly withheld several pages to protect the identities of third parties because the agency could have simply redacted the names of those parties. The subjects of the pages that Villar challenges relate specifically to third parties. For example, many of the pages detail the assistance that sources or other parties provided the agency or summarize important investigation milestones about suspects other than Villar. It is a reasonable inference, as the FBI contends, that disclosing the highly-personalized information contained in these documents would likely reveal the identity of the third-party subjects of those documents. Therefore, the court concludes that the FBI properly withheld in full the pages that Villar challenges.

Accordingly, the court concludes that the FBI conducted an appropriate segregability analysis for the material that it withheld.

IV.   In Camera Review

Villar contends that the court should not grant summary judgment because it should first review the documents in camera. Villar does not specify which documents he believes warrant in camera review.

In camera review is designed for situations where the "agency affidavits [are] 'too generalized to establish eligibility for an exemption.'" Maynard, 986 F.2d at 557 (quoting Church of Scientology, 611 F.2d at 742).  Moreover, "in camera review is particularly appropriate when the documents withheld are brief and limited in number."  Id.  In other words, "full in camera reviews are appropriate in cases involving a very limited number of relatively brief documents."  Id. (quoting Ingle v. Dep't of Justice, 698 F.2d 259, 264 (6th Cir. 1983)).

Here, the FBI's affidavit sufficiently demonstrates its entitlement to the claimed exemptions.  Further, the volume of pages at issue in this case makes it inappropriate for a full in camera review.  The court declines to conduct an in camera review here.

**CONCLUSION**

For the foregoing reasons, the court grants the FBI's motion for summary judgment (doc. no. 55) and denies Villar's motion for summary judgment (doc. no. 56).  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 23, 2018

cc:  Counsel of Record